UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: ) | Case No. 301-12036 |
| ) | Chapter 11 |
| PHOENIX RESTAURANT GROUP, INC., ) | Bankruptcy Judge Lundin |
| et al., ) | Jointly Administered |
| ) | |
|     Reorganized Debtors. ) | Bankruptcy Adv. No. 03-0568A |
| _____ ) | |
| ) | |
| PHOENIX RESTAURANT GROUP, INC., ) | |
| et al., ) | |
| ) | No. 3:06-0881 |
|     Plaintiffs/Appellees, ) | JUDGE ECHOLS |
| ) | |
| v. ) | |
| ) | |
| PROFICIENT FOOD COMPANY, ) | |
| ) | |
|     Defendant/Appellant. ) | |

## MEMORANDUM

Pending before the Court is the timely direct appeal from the Bankruptcy Court's Final Judgment, entered in this adversary action on July 28, 2006, in favor of the Plaintiff/Appellee Plan Administrator and against Defendant/Appellant Proficient Food Company in the amount of $519,077.63. The Court has jurisdiction of the appeal pursuant to 28 U.S.C. § 158(a)(1).

## I. FACTS AND PROCEDURAL HISTORY

Phoenix Restaurant Group, Inc. ("PRG"), and its affiliates Denam, Inc., Phoenix Foods, Inc., Black-Eyed Pea U.S.A., Inc., Prufrock Restaurants of Kansas, Inc., and Texas BEP, L.P., operated numerous Denny's and Black-Eyed Pea Restaurants in several states. Proficient Food Company ("Proficient") served as a vital supplier of food products to PRG's Denny's Restaurants prior to and during this bankruptcy proceeding.

On October 18, 2001 ("the Petition Date"), six creditors of PRG commenced an involuntary Chapter 7 bankruptcy case against PRG in Florida. On October 29, 2001, the Florida bankruptcy court transferred the proceeding to the Middle District of Tennessee where PRG's principal executive offices are located. On October 31, 2001, PRG sought to convert the involuntary Chapter

7 case to a reorganization proceeding under Chapter 11 of the Bankruptcy Code. PRG's affiliates filed voluntary Chapter 11 petitions on the same day.

On November 2, 2001, Proficient sent a letter to counsel for PRG, pursuant to 11 U.S.C. § 546 and Uniform Commercial Code § 2-702, demanding reclamation of food products supplied to Denny's Restaurants in the ten (10) days preceding the filing of the involuntary bankruptcy petition on October 18, 2001. Proficient stated that PRG owed it $540,048.60 for these deliveries and attached a list of related invoices. Proficient expressly reserved its rights and remedies under "any other applicable law, including but not limited to the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, *et seq.* ("PACA")[.]" (Docket Entry No. 1, Part 29.) In a second letter sent to PRG on November 7, 2001, Proficient supplied information to support its claim against PRG under PACA. (Docket Entry No. 1, Part 35.)

On November 6, 2001, the Bankruptcy Court granted the relief requested by PRG and its affiliates, and converted PRG's involuntary Chapter 7 case to a Chapter 11 proceeding. On November 13, 2001, the U.S. Trustee appointed five creditors, including Proficient, to the Creditors' Committee. On November 14, 2001, the Bankruptcy Court entered an Order consolidating the cases and providing for their joint administration. During these proceedings, PRG and its affiliates[1] operated their businesses and/or managed their assets as debtors-in-possession under Sections 1107 and 1108 of the Bankruptcy Code.

On November 16, 2001, PRG filed a motion seeking discretionary authority to make payments to Proficient as a critical vendor ("the Critical Vendor Motion"). (Docket Entry No. 1, Part 33.) PRG stated in the Critical Vendor Motion that Proficient was the only supplier authorized and approved by Denny's to provide necessary inventory, PRG purchased approximately $250,000 of inventory from Proficient each week, and Proficient had threatened to stop supplying inventory unless PRG made arrangements for payments on Proficient's pre-petition claims of approximately

---

[1]Henceforth in this opinion, "PRG" will refer to both PRG and its affiliates.

$7 million. The Critical Vendor Motion set forth a list of terms for the making of these payments to Proficient.

The U.S. Trustee, the Creditors' Committee and LH Leasing Company objected to the Critical Vendor Motion, but ultimately a settlement was reached and the Bankruptcy Court entered an agreed Order on December 12, 2001. (Docket Entry No. 1, Part 36.) The Order provided that the "total to be paid to Proficient . . . on account of its prepetition claims, PACA claims, and Reclamation claims is $900,000 ("Critical Vendor Payment")." (Id. at Supplemental Terms to Critical Vendor Motion.) Further, "[f]unds received by or on behalf of Proficient . . . since [the] Petition Date in excess of cost of goods sold since the Petition Date will be credited against the Critical Vendor Payment (approximately $311,000 through November 26, 2001)." (Id.) The "[r]emainder of the Critical Vendor Payment will be paid $50,000 per week, by premium of $10,000 per day in wire transfer payments." (Id.) The "[b]alance of $900,000 will be paid at closing of sale as a super priority claim, junior only to Debtor in Possession financing liens. However, the balance loses its super priority status in the event of conversion to a chapter 7 case; in that instance, it will be on the same priority as other chapter 11 administrative claims." (Id.)

The Order further provided that, "[w]hen the Order approving the Critical Vendor Motion is final and not subject to appeal, Proficient Food Company's PACA claim of approximately $194,000 is waived." (Id.) Of particular importance to this appeal, the Order provided that "[a]ll Critical Vendor Payments will be applied first to payment of the reclamation claim of approximately $540,000." (Id.) In return for these payments, Proficient agreed to continue to sell goods to PRG through March 30, 2002. (Id.)

On October 23, 2002, the Bankruptcy Court confirmed the First Amended Joint Liquidating Plan of Reorganization ("the Plan"). Pursuant to the Confirmation Order, the estates of PRG and its affiliates were consolidated into a single estate to be administered by PENTA Advisory Services as Plan Administrator. Under the Plan, the Plan Administrator had all of the powers and duties of a trustee.

On October 18, 2003, the Plan Administrator filed over 200 adversary proceedings to avoid preferential transfers under 11 U.S.C. § 547(b). This action filed against Proficient sought avoidance and recovery of payments totaling $3,707,311.97 made to Proficient by PRG during the ninety days before bankruptcy. Proficient pled various defenses, including statutory defenses of contemporaneous exchange, 11 U.S.C. § 547(c)(1); ordinary course of business, § 547(c)(2); and subsequent new value, § 547(c)(4). Presently before this Court for review are the rulings of the Bankruptcy Court made on Proficient's motion for summary judgment and following trial.

## II. STANDARDS OF REVIEW

Under Federal Rule of Civil Procedure 56(c), which is made applicable to adversary proceedings and contested matters in bankruptcy cases by Federal Rules of Bankruptcy Procedure 7056 and 9014, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). This Court reviews *de novo* the Bankruptcy Court's decision to deny summary judgment. In re Batie, 995 F.2d 85, 88-89 (6th Cir. 1993).

The standard of review to determine if a lower court properly applied principles of judicial estoppel is *de novo*. Browning v. Levy, 283 F.3d 761, 775 (6th Cir. 2002). But see Lewis v. Weyerhaeuser Co., 141 Fed.Appx. 420, 423-424 (6th Cir. 2005) (standard of review is abuse of discretion). Similarly, the standard of review for the Bankruptcy Court's decision to permit amendment of a complaint and relation back of an added cause of action is *de novo*. Miller v. American Heavy Lift Shipping, 231 F.3d 242, 246-247 (6th Cir. 2000).

This Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo*. Rembert v. AT & T Univ. Card Serv. (In re Rembert), 141 F.3d 277, 280 (6th Cir. 1998). A factual finding is clearly erroneous only when the reviewing court is left with the definite and firm conviction on the entire evidence that a mistake has been made. Id.

4

## III. ANALYSIS

### A. Proficient's "New Value" Defense

Proficient raised as its principal statutory defense to the preference action that Proficient provided "new value" to PRG in the form of ongoing inventory in return for PRG's pre-petition payments. Proficient challenges the Bankruptcy Court's holding that satisfaction of Proficient's reclamation claim in the amount of $540,000 precluded Proficient's "new value" defense to that amount.

The trustee in bankruptcy may recover for the benefit of all creditors those transfers made by the debtor within ninety days of bankruptcy which have the effect of preferring one creditor over another. 11 U.S.C. §§ 547, 550. The trustee carries the burden of proof on all elements of a preference listed in § 547(b). 11 U.S.C. § 547(g). The preference defendant may raise one or more of eight statutory defenses, which are listed in § 547(c), and the preference defendant carries the burden of proof on each defense. 11 U.S.C. § 547(g).

The statutory defense found in section 547(c)(4) is referred to as the "subsequent advance rule." Waldschmidt v. Ranier ( In re Fulghum Constr. Corp.), 706 F.2d 171, 172 (6th Cir. 1983). This statutory defense provides:

> (c) The trustee may not avoid under this section a transfer –
>
> . . . .
>
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor –
>
> > (A) not secured by an otherwise unavoidable security interest; and
> >
> > (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor[.]

11 U.S.C. § 547(c)(4). Interpreting this subsequent advance rule, the Bankruptcy Court explained:

> The logic of this defense is that an otherwise preferential transfer is not avoidable to the extent that, after the transfer, the creditor gave the debtor "new

5

value" in a form that replenished the debtor. *See, e.g.*, *Williams v. Agama Sys., Inc. (In re Micro Innovations Corp.)*, 185 F.3d 329, 336 (5th Cir. 1999). Replenishing the debtor for purposes of the § 547(c)(4) defense has several facets. Fundamentally, the debtor must receive "new value" defined by § 547(a)(2) as follows:

> (a) In this section–
> . . . .
> (2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

11 U.S.C. § 547(a)(2).

> New value given after a preferential transfer helps the defendant only if it is not secured by an unavoidable security interest. 11 U.S.C. § 547(c)(4)(A). *See In re Micro Innovations Corp.*, 185 F.3d at 334-35. This makes sense because the debtor is not enhanced if the new value given after the preferential transfer is subject to liens and would not balance the loss caused by the preferential transfer.
> Also, the new value must not have been paid for by the debtor with a transfer that cannot itself be avoided. 11 U.S.C. § 547(c)(4)(B). In other words, the new value must remain an enhancement of the debtor notwithstanding transfers (typically payments) to the creditor by the debtor after the new value was given. A payment by the debtor to the creditor after the creditor gave new value does not unravel the defense if the payment can itself be recovered as an avoidable transfer.

(Docket Entry No. 1, Part 24, Memorandum at 12-13.) As the Bankruptcy Court noted, the policies behind § 547(c)(4) are to encourage the creditor to continue to do business with the troubled debtor and to insure that the creditor who contributes new value to the debtor in return for pre-petition payments is not later deemed to have depleted the bankruptcy estate to the disadvantage of other creditors. (Id.)

The Bankruptcy Court did not accept the trustee's position that the post-petition payments made by the debtor-in-possession to Proficient under the Critical Vendor Order were "otherwise unavoidable" transfers that could be used to offset the pre-petition "new value" given by Proficient. The Bankruptcy Court reasoned that the preference window of § 547 closed on the date of the filing of the bankruptcy petition and post-petition payments could not be used to deplete pre-petition "new value." The Bankruptcy Court further held, however, that the amount of Proficient's reclamation claim could be used to deplete Proficient's pre-petition "new value" because Proficient essentially

6

kept strings on those goods and thus, the goods subject to reclamation did not enhance PRG and did not constitute "new value" under § 547(a)(2). In so holding, the Bankruptcy Court discussed Ringel Valuation Servs., Inc. v. Shamrock Foods Co. (In re Arizona Fast Foods, LLC), 299 B.R. 589 (Bankr. D. Ariz. 2003):

> *Arizona Fast Foods* reaches the right result with respect to the effect of reclamation on the new value defense, but slightly different logic explains that outcome. As a matter of statutory interpretation, post petition payment through the confirmed plan in *Arizona Fast Foods,* or, as here, by the Debtors-in-Possession, was not a transfer by the *debtor* for § 547(c)(4)(B) purposes. Accordingly, the post petition payment cannot be an "otherwise unavoidable" transfer by the debtor that defeats the prepetition new value for which it paid.
> However, goods shipped on the eve of bankruptcy that are subject to reclamation are not the same "money or money's worth, as goods shipped free of the seller's strings. *See* 11 U.S.C. § 547(a)(2). In the same sense that goods subject to a PACA trust do not enhance the debtor because the value of those goods is held in trust for the growers and shippers, goods subject to reclamation do not enhance the debtor to the extent the value of those goods can be reclaimed.
> Here, the new value given by Proficient must be reduced to reflect its reclamation claim–not because it received an otherwise avoidable payment after the petition–but because the new value given to the Debtors prepetition must be discounted to reflect the right of reclamation preserved by § 546(c). Put another way, the [trustee] cannot use post petition payments under the Critical Vendor Order as "otherwise unavoidable" transfers that deplete the prepetition new value given by Proficient; but Proficient in its calculations failed to adjust new value during the preference period to reflect goods subject to reclamation.

(Docket Entry No. 1, Part 24, Memorandum at 20-21.)

The Court concludes that the Bankruptcy Court correctly analyzed this issue. Proficient had the right either to reclaim goods of a value of $540,000 or have its reclamation claim enhanced in priority over other creditors to that amount. 11 U.S.C. § 546(c). Either way, Proficient's reclamation claim would not add "new value" to the debtor; as the Bankruptcy Court put it, these goods were not "shipped free of the seller's strings." Proficient could not assert a reclamation claim of $540,000 and then also characterize that same $540,000 as "new value" to the debtor to reduce any preference. Otherwise Proficient could count the same amount in its favor twice, and doing so would clearly place Proficient ahead of other creditors, defeating the purpose of § 547. This is so even without considering that the post-petition debtor-in-possession paid Proficient $540,000 in cash, not goods, to settle the reclamation claim under the Critical Vendor Order.

7

Although Proficient contends that Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp. (In re Pittsburgh-Canfield Corp.), 309 B.R. 277, 284 (6th Cir. B.A.P. 2004), "is diametrically opposed to the Court's decision in this case[,]" (Opening Brief at 18), the Court does not see an inconsistency in the two cases. As Proficient points out, the Sixth Circuit Bankruptcy Appellate Panel wrote:

> The right of reclamation is a rescissional remedy, based upon the theory that the seller has been defrauded. . . . Because the buyer retains the apparent authority to deal with goods, the sale of goods to a good faith purchaser cuts off a seller's right to reclaim. *Id.* Most secured creditors are good faith purchasers under the Uniform Commercial Code, thus the rights of a reclaiming seller generally will be inferior to those of a secured creditor who has a security interest[] in the goods but superior to those of the buyer's general unsecured creditors. *Id.* at 845.

Id. These principles reflect the operation of § 546(c) and are not inconsistent with the Bankruptcy Court's holding below. Proficient's rights as a reclaiming seller generally would be inferior to those of PRG's secured creditors who had security interests in the same goods delivered by Proficient, but Proficient's rights as a reclaiming seller would still be superior to PRG's general unsecured creditors. There is nothing about this proposition that is "diametrically opposed to the Court's decision in this case."

Another case cited by Proficient, Gonzales v. Nabisco Div. of Kraft Foods, Inc. (In re Furr's Supermarkets, Inc.), 317 B.R. 423 (10th Cir. B.A.P. 2004), is distinguishable. In that case, Furr's Supermarkets returned damaged or out-of-date grocery goods to Nabisco, and the trustee admitted that the items returned had no value to Nabisco at the time of their return. Id. at 425-426. The Tenth Circuit Bankruptcy Appellate Panel affirmed the bankruptcy court's holding that Furr's return of goods to Nabisco would not be an avoidable transfer because at the time of return the goods had no value. Id. at 429. "A transfer of valueless property is not an avoidable transfer. . . . Since the return of goods by Furr's to Nabisco does not constitute an avoidable transfer, it does not dilute the new value provided by Nabisco." Id. The court explained that it did not matter that Nabisco may have agreed to give Furr's full credit for returned product because the fact remained that the goods

8

had no value when returned. Id. at 430. Here, Proficient's reclamation claim had a value of $540,000.

Whatever benefit PRG obtained by Proficient's shipment of goods to PRG was negated by Proficient's right of reclamation in those same goods. Therefore, Proficient did not replenish PRG in the amount of the reclamation claim, $540,000, and the Bankruptcy Court properly held that $540,000 did not constitute "new value" for the purpose of Proficient's statutory defense under § 547(c)(4). Thus, the Bankruptcy Court correctly denied Proficient's motion for summary judgment on this issue.

**B. Amendment of the Complaint**

This preference action concerned numerous prepetition checks written by PRG to Proficient. Two of the checks, Check No. 16855 in the amount of $107,919.30 and Check No. 171116 in the amount of $216,830.29, were dated October 3, 2001, but did not clear PRG's bank until October 18, 2001, the Petition Date. On February 11, 2005, approximately one month prior to trial and after discovery was closed, the Plan Administrator filed a motion seeking leave to amend the preference complaint to add an alternative cause of action in an effort to avoid these two post-petition transfers pursuant to 11 U.S.C. § 549. (Docket Entry No. 1, Part 16.) The motion explained that PRG did not realize Proficient was taking the position that these two checks cleared the bank postpetition until PRG received some of Proficient's discovery responses. Because the alternative count arose completely out of the same transaction set forth fully in the original pleading, the Plan Administrator suggested that Proficient would not be prejudiced by the amendment.

The Bankruptcy Court heard arguments on the motion (March 7, 2005 & July 19, 2005 Hr'g Trs.) and considered a subsequent Stipulation of Facts submitted by the parties (Docket Entry No. 2, Part 8). Over Proficient's objections, the Bankruptcy Court permitted amendment of the Complaint under Federal Rule of Civil Procedure 15, as adopted by Rule 7015 of the Federal Rules of Bankruptcy Procedure, and pursuant to Miller v. American Heavy Lift Shipping, 231 F.3d 242, 248 (6th Cir. 2000). (Docket Entry No. 2, Part 9.) Proficient now contends that the Bankruptcy

9

Court erred in permitting the amendment and the relation back of a time-barred alternative cause of action under § 549.

Rule 15(c) provides: "An amendment of a pleading relates back to the date of the original pleading when . . . (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading[.]" "[W]hether a statute of limitations will be permitted to bar an amended claim turns on whether the amended claim arose out of the same conduct, transaction, or occurrence as that set forth in the original complaint[.]" Miller, 231 F.3d at 248. The "thrust" of Rule 15 is that cases are to be tried on their merits rather than on the technicalities of pleadings. Id. "Thus, a court will permit a party to add even a new legal theory in an amended pleading as long as it arises out of the same transaction or occurrence." Id. Other factors must be considered in determining whether an amendment should be permitted to relate back: undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. Id. at 250.

The preference complaint included a cause of action under 11 U.S.C. § 547 for prepetition transfers. Check Numbers 16855 and 171116 arose out of the same course of conduct between PRG and Proficient that was specified in the preference complaint. Because the two checks cleared the bank on the same day but after the involuntary bankruptcy petition was filed, the checks constituted post-petition transfers. The Bankruptcy Court did not err in permitting the Plan Administrator to amend the preference complaint to add an alternative cause of action under § 549 to avoid post-petition transfers and to allow that cause of action to relate back to the timely filing date of the preference complaint.

Proficient did not establish below that the Plan Administrator engaged in undue delay in filing the motion to amend the complaint. The Plan Administrator stated that it did not realize until it received Proficient's discovery responses that two checks did not clear the bank until October 18. The Bankruptcy Court observed that it was not until January 24, 2005, through Proficient's

10

discovery responses, that the issue first crystalized that two checks were not honored until after the Petition Date and that they constituted post-petition transfers. (July 19, 2005 Hr'g Tr. at 28.) Two weeks after that realization on February 11, 2005, the Plan Administrator sought to amend the complaint. The Bankruptcy Court determined that a delay of two weeks to seek leave to amend did not constitute undue delay in seeking amendment. There was no lack of notice to Proficient because Proficient was the first party to raise the issue. The Bankruptcy Court did not clearly err in finding there was no bad faith on the part of the Plan Administrator in seeking the amendment where Proficient did not submit any evidence of bad faith. Likewise, there was no proof of repeated failure to cure deficiencies by previous amendments and no indication that the amendment would be futile.

As far as undue prejudice to Proficient, the Bankruptcy Court recognized there was some prejudice to Proficient because its defenses could change in response to the new legal theory. However, the Bankruptcy Court properly held that the prejudice was not undue, and the Bankruptcy Court ameliorated any potential undue prejudice by permitting Proficient to undertake additional discovery. (Id. at 33, 35.) The Court can find no error of fact or law in the Bankruptcy Court's decision on this issue.

## C. Judicial Estoppel

The Critical Vendor Motion filed by PRG promised payment of Proficient's reclamation claim, without specifically quantifying the claim. The trustee objected, and this objection, among others, was resolved in the Supplemental Terms that were attached and incorporated into the Critical Vendor Order on December 12, 2001. Of the total $900,000 the debtor-in-possession paid to Proficient post-petition by virtue of the Critical Vendor Order, $540,000 applied to Proficient's reclamation claim. Thus, although Proficient now contends that there was a senior lien creditor who cut off all of Proficient's reclamation rights and "there was no factual basis upon which to legally conclude that Proficient's reclamation demand had reached any goods much less any that it might have been permitted actually to reclaim[,]" (Opening Brief at 30), it nonetheless remains fact that Proficient was fully satisfied for its reclamation claim.

11

In its Memorandum in support of its Motion for Summary Judgment, Proficient acknowledged that its reclamation claim was paid through the Critical Vendor Order, but nonetheless argued that payment of the reclamation claim should not preclude Proficient from counting the same amount in support of its "new value" defense. (Docket Entry No. 1, Part 9 at 5-9.) When the Bankruptcy Court properly rejected Proficient's contention, as previously discussed above, Proficient then reversed its position and argued that "it did not really have a valid reclamation claim at the time of the Critical Vendor Motion or Order[,]" (Docket Entry No. 1, Part 7 at 13), and "[u]pon that disclaimer, Proficient would construct a new value defense under § 547(c) for the amounts it previously characterized as reclamation claims." (Id.)

The Bankruptcy Court wrote that Proficient's "about-face has judicial estoppel written all over it." (Docket Entry No. 2, Part 7.) The Bankruptcy Court looked to Excel Energy, Inc. v. Smith (In re Commonwealth Institutional Secs., Inc.), 394 F.3d 401, 406 (6th Cir. 2005), to identify and apply the three factors warranting judicial estoppel. First, the court noted, a party's later position must be "clearly inconsistent" with its earlier position. Second, a court should review whether the party had succeeded in persuading the court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Third, the court should evaluate whether the party advancing an inconsistent position would gain an unfair advantage if allowed to proceed with the argument. (Docket Entry No. 2, Part 7 at 13-14.)

The Bankruptcy Court concluded that Proficient was "judicially estopped to argue that it never had valid reclamation claims for purposes of the new value defense in this adversary proceeding." (Id. at 14.) Early in the bankruptcy proceeding, before the adversary action was filed, Proficient represented to the debtors, the Trustee, secured creditors, the Creditors' Committee, and the Bankruptcy Court that it held reclamation (and PACA) claims that entitled it to substantial post-petition payments ahead of all other creditors. "On the force of these representations, $540,000 was allocated from the first payments made under the Critical Vendor Order to satisfy Proficient's

12

reclamation claims. Proficient successfully persuaded the court to approve this special treatment based on its reclamation demands. Proficient will not now be heard to say it was all litigation strategy." (Id.)

It is disingenuous for Proficient to argue before this Court, citing Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598-599 (6th Cir. 1982), that the settlement culminating in the Critical Vendor Order could not warrant the application of judicial estoppel because there was "no judicial acceptance or rejection of any position." (Opening Brief at 31.) PRG sought to make Critical Vendor payments to Proficient to insure a flow of inventory during the bankruptcy proceeding and in exchange for such payments Proficient agreed to continue supplying PRG until March 2002. In signing the agreed Order granting the Critical Vendor Motion, the Bankruptcy Court clearly relied on Proficient's unequivocal position at the time that Proficient would continue to supply PRG as debtor-in-possession in return for $900,000 in Critical Vendor payments, $540,000 of which applied to Proficient's reclamation claim.

The Court can find no error of law or fact in the Bankruptcy Court's application of judicial estoppel. To allow Proficient to proceed with its "new and inconsistent position would give Proficient a windfall in the context of this preference litigation." (Docket Entry No. 2, Part 7 at 14.) Proficient had been paid in full for the reclamation rights it previously asserted and those payments were not otherwise avoidable. The Bankruptcy Court properly refused to allow Proficient to adopt a wholly different position in order to reduce the preference claim "by an equal amount–a second recovery of the same value." (Id. at 14-15.)

**D. The Bankruptcy Court did not disregard the history of the case**

*1. The Critical Vendor designation did not foreclose the subsequent preference action*

Proficient contends that, once it was designated a Critical Vendor, it was no longer similarly situated to other unsecured creditors and of the same class as such creditors. Rather, its interests were separate and distinct from those of other unsecured creditors, and its treatment and relationship with the debtors were greatly altered, relying on In re Superior Toy & Mfg. Co., 78 F.3d 1169, 1171

13

(7th Cir. 1996). Consequently, as a matter of law, Proficient argues it was inconsistent to pay down Proficient's pre-petition claim pursuant to the Critical Vendor Order and then later seek to recover other prepetition payments of the same kind as a preference, thereby running up Proficient's pre-petition claim and increasing Proficient's losses.

Similarly to HLI Creditor Case v. Export Corp. (In re Hayes Lemmerz Int'l), 313 B.R. 189 (Bankr. D. Del. 2004), the Critical Vendor Order, although the law of this case, did not *require* pre-petition claims to be paid in full. Rather, the Critical Vendor Order gave the Debtors discretionary authority to make payments on account of pre-bankruptcy claims to Proficient as its critical food supply vendor and the Order stated that Debtors were "authorized, but not directed, to comply with the Supplemental Terms[.]" More importantly, the Critical Vendor Order did not expressly provide that preferential transfers could not be recovered from Proficient.

To the extent Proficient analogizes its situation to that of a contract assumption, paragraph 19(f) of the Critical Vendor Motion, (Docket Entry No. 1, Part 33 at 9), provided that "[n]othing contained herein shall be deemed . . . (ii) an assumption of any contract or agreements with [Proficient.]" Moreover, the Bankruptcy Court correctly observed:

> This case is fundamentally different than Superior Toy. There is no statute that required the Critical Vendor payments on account of prepetition debt or that compelled Proficient to accept performance by the Debtors-in-Possession. Section 365 required the licensor to accept the debtor's performance in Superior Toy once the debtor paid the royalties due before assumption. Proficient had a choice to deal or not with the Debtors-in-Possession. Here, there was no contract or lease assumed and no statutory protection enveloped Proficient's receipt of prepetition payments. The Critical Vendor Motion specifically stated that nothing contained therein would be deemed an assumption of any contract or agreement between the Debtors and Proficient. (Critical Vendor Motion at 9.)

(Docket Entry No. 1, Part 24, Memorandum at 27.) The Court concludes that the Bankruptcy Court correctly determined that the subsequent preference action against Proficient was not waived because Proficient was designated a Critical Vendor early in the proceeding.

*2. Proficient was not the beneficiary of a general release of liability*

14

The First Amended Plan contained a broad release for the benefit of Creditors' Committee members, of which Proficient was one, as follows:

> From and after the Effective Date, the Committee and its members . . . shall be and hereby are fully exculpated by all Persons and Entities, including, without limitation, holders of Claims and other parties in interest, from any and all claims, causes of action, and other assertions of liability except for their own gross negligence or ultra vires acts arising out of the discharge of the powers and duties conferred upon the Committee by the Bankruptcy Code or any order of the Bankruptcy Court. No holder of a Claim or other party in interest will have or pursue any claim or cause of action against the Committee.

(Docket Entry No. 1, Part 10, Ex. H at ¶ 18.13.) Proficient claims that it was the beneficiary of this general release, the release covered this preference action, and therefore, the Bankruptcy Court should have granted summary judgment in Proficient's favor.

The Court fails to see how this preference action could be said to arise "out of the discharge of the powers and duties conferred upon the Committee by the Bankruptcy Code or any order of the Bankruptcy Court." Furthermore, although Proficient contends that the preference action against it is covered by the language quoted above, the clause makes no reference whatsoever to "Bankruptcy Causes of Action," "powers granted to a Trustee under the Bankruptcy Code," or "avoidance claims."

Section 1.15 of the Confirmed Plan defines "Bankruptcy Causes of Action" to include "[a]ll claims, actions, causes of action [and] suits, . . . arising under the Bankruptcy Code (including but not limited to, all claims and any avoidance . . . actions against insiders and/or any other Entities under sections . . . .547 [and] 549 . . . of the Bankruptcy Code or otherwise) of the Debtors, the Debtors in Possession, and/or the Post-Confirmation Estate . . . .that are or may be instituted by the Plan Administrator[.]" Section 18.12.1 provides that the "Plan Administrator shall have full power and authority to exercise any and all powers granted by any applicable law, including the powers granted to a trustee under the Bankruptcy Code in order to administer the Post-Confirmation Estate." Section 16.6.2 states in part that "[u]nless Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or any Final Order, the

15

Debtors expressly reserve all Causes of Action, including the Bankruptcy Causes of Action[.]" Page 23 of the Confirmed Plan also states that "[e]xcept for the express waiver of certain claims in the Plan, any and all actual or potential avoidance claims pursuant to any applicable section of the Bankruptcy Code," including sections 547 and 549, are potential Bankruptcy Causes of Action which may be pursued by the Plan Administrator.

Neither the Order for Relief nor the instant preference action arose out of Proficient's discharge of Creditor Committee power and duties. The preference action arose out of PRG's pre-petition payments to Proficient, which the Plan Administrator sued to avoid. The right of the Plan Administrator to bring this action is specifically reserved in the Confirmed Plan, and Proficient has pointed to no express release from this preference liability. The language of the Confirmed Plan is plain and straightforward, and no ambiguity is presented. It would be unreasonable and illogical to read the Creditors' Committee Exculpation Provision as a release of Proficient from the preference claims. The Bankruptcy Court properly held that the Committee's general release did not absolve Proficient from liability in this preference action.

*3. The doctrines of res judicata and judicial estoppel did not preclude this action*

Citing Browning v. Levy, 283 F.3d 761, 774 (6th Cir. 2002), Proficient contends that the Confirmed Plan operates as *res judicata* regarding all claims that were not fully disclosed and specifically preserved in the Confirmed Plan and Disclosure Statement, and a general, blanket reservation of claims of the type contained in the Confirmed Plan and Disclosure Statement was insufficient to preserve this preference action against Proficient. Further, Proficient contends that the Plan Administrator is judicially estopped to pursue this preference action because the plan documents did not clearly state that the Debtors would pursue an action against Proficient at all, much less for $3,700,000 via this action.

The Bankruptcy Court correctly held that the facts here present a clearer case than Elk Horn Coal Co, LLC v. Conveyor Mfg. & Supply, Inc. (In re Pen Holdings, Inc.), 316 B.R. 495 (Bankr. M.D. Tenn. 2004). As explained above, the Confirmed Plan, Disclosure Statement and exhibits

repeatedly reserved Bankruptcy Causes of Action, which were defined to include preference actions under § 547 and § 549. These references to preference litigation were not concealed as retention of jurisdiction provisions, they were not ambiguously worded, and they specifically referenced § 1123(b)(3) of the Code. It was plainly set forth in the Confirmed Plan and Disclosure Statement that preference actions would be assets of the Post-Confirmation Estate, to be investigated and pursued by the Plan Administrator. Attached to the Confirmed Plan and Disclosure Statement were exhibits which listed, to the extent then possible, creditors to whom payments were made during the preference period. Proficient was named in the exhibits to the Confirmed Plan. Thus, Proficient, among other creditors, was able to identify and evaluate the estate's assets, including any preference actions under § 547. The Bankruptcy Court correctly held that neither *res judicata* nor judicial estoppel precluded the Plan Administrator from pursuing this preference action against Proficient.

### E. Delivery of post-petition goods did not support Proficient's defense under § 549(b)

Finally, Proficient contends that the Bankruptcy Court erred in holding that § 549(b) could not provide a defense to recovery by the Debtors of post-petition payments made immediately following the filing of the petition but prior to entry of the Order for Relief.

Section 549(b) excludes from avoidance:

> a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

Proficient contends Check Numbers 16855 and 171116 cleared the Debtors' bank post-petition during the "gap" period, and Proficient also during the "gap" period delivered goods to the Debtors that had a value of more than the amount of the post-petition transfers. Proficient contends these post-petition deliveries of food inventory allowed the Debtors to operate and precluded Debtors from incurring substantially greater costs than would have resulted if the Debtors had been required to purchase goods from another supplier. Relying on In re Oakwood Markets, Inc., 203 F.3d 406 (6th Cir. 2000), Proficient argues that, even though it was paid for the post-petition deliveries, the after-

17

the-fact payment did not prevent the Bankruptcy Court from finding that Proficient gave value to the estate by virtue of the post-petition deliveries. Proficient contends the Bankruptcy Court's rejection of its § 549(b) defense was incorrect as a matter of law under Oakwood Markets.

The Sixth Circuit stated in footnote 1 of Oakwood Markets, however, that a payment for an arrearage owed by Oakwood Properties could not be excepted from avoidance under § 549(b). Here, the two checks which cleared the Debtors' bank post-petition were paid to satisfy a pre-petition arrearage PRG owed to Proficient. Thus, both payments were avoidable and were not subject to the § 549(b) defense. The Bankruptcy Court did not err when it avoided these transfers as unauthorized post-petition transfers under § 549 and entered final Judgment against Proficient in the total amount of $519,077.63.

## IV. CONCLUSION

For all of the reasons stated, the Final Judgment of the Bankruptcy Court in favor of the Plan Administrator in the amount of $519,077.63 and against Proficient will be AFFIRMED.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE